IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ISHA DATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:14-cv-01464-VEH |
| | ) |
| FRANK NORTON, LLC, d/b/a | ) OPPOSED |
| MILO'S HAMBURGERS, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S DAUBERT MOTION TO EXCLUDE DR. GOLDSTEIN

Defendant Frank Norton, LLC d/b/a Milo's Hamburgers ("Milo's") moves this Court to enter an Order excluding Plaintiff's expert, Dr. Robert Goldstein ("Dr. Goldstein"), from testifying at trial. In the event that the Court does not grant this motion in its entirety, Milo's alternatively moves the Court to exclude from *voir dire* and opening statement any statements regarding the evidence described below. In support of this Motion, Milo's states as follows:

Plaintiff cannot carry her burden to demonstrate, as a substantive matter, that Dr. Goldstein is sufficiently qualified to offer expert testimony and that his proposed testimony is sufficiently reliable and relevant and would assist the jury. Instead, Dr. Goldstein's report, prepared for litigation purposes, reflects a lack of rigor that is unacceptable in his field. Dr. Goldstein conducted no psychological tests and cites

no literature or relevant studies bolstering his methods or his application of those methods to Plaintiff. The result is a cookie-cutter report that strains to reach the same conclusion in virtually every instance, regardless of the facts. For these reasons, Dr. Goldstein's testimony should be excluded from trial.

## BACKGROUND

This is a sexual harassment and retaliation suit brought by Plaintiff Isha Dates. Plaintiff asserts claims for hostile work environment, discriminatory discharge, and retaliation, under 42 U.S.C. § 1981, and hostile work environment and discriminatory discharge, under Title VII. Plaintiff retained general psychiatrist Dr. Goldstein to provide an expert opinion on the emotional/psychological injury she allegedly suffered as a result of Defendant's employees' actions. Dr. Goldstein's report is attached as Exhibit 1 and his deposition transcript is attached as Exhibit 2.

**I.      DR. GOLDSTEIN'S PROPOSED TESTIMONY FAILED DAUBERT'S SUBSTANTIVE STANDARDS AND SHOULD BE EXCLUDED FOR THAT INDEPENDENT REASON.**

Because Plaintiff fails to meet her burden to show that Dr. Goldstein is qualified, or that his testimony is reliable, relevant, and will assist the jury, Dr. Goldstein should be excluded from trial.

The familiar substantive standards that govern admissibility of expert testimony—established in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny—require that opinion testimony meet every requirement of

Fed. R. Evid. 702. The rule provides: a witness qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Rule 702 and Daubert apply to all proposed expert testimony.

A trial court acts as "gatekeeper" to ensure a proper application of Rule 702. Daubert, 509 U.S. at 589. "The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." Corwin v. Walt Disney Co., 475 F.3d 1239, 1250 (11th Cir. 2007). The court makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue." Id. at 592-93. In short, the court must ensure that the expert is qualified, uses reliable methods to reach his opinions, that the opinions are relevant to the case, and that the opinions are helpful to the jury. Fed. R. Evid. 702; Daubert, 509 U.S. at 589.

A trial court enjoys wide discretion to exclude expert testimony, and appellate courts are "mindful of the Supreme Court's directive that it is very much a matter of discretion with the [trial] court whether to receive or exclude the evidence." Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1107 (11th Cir. 2005) (quotes omitted). Thus, a trial court decision to exclude an expert will not be

disturbed unless it is "manifestly erroneous." General Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997); Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Daubert, 509 U.S. at 592 n.10; Estate of Tessier, 402 F.3d at 1107.

Dr. Goldstein's report and his testimony do not meet the substantive requirements of Daubert. Plaintiff has failed to carry her burden to show that Dr. Goldstein's opinions and testimony are sufficiently reliable, relevant, and helpful to the jury. For the independent reasons, Dr. Goldstein's testimony should be excluded.

## II. DR. GOLDSTEIN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT RELIABLE OR RELEVANT AND WILL NOT ASSIST THE JURY.

A trial court may exclude expert testimony when its factual basis is not adequately explained or where there "is simply too great an analytical gap between the data and the opinion proffered." Joiner, 522 U.S. at 146; Cook, 402 F.3d at 1111. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." Michigan Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921 (11th Cir.1998); see Joiner, 522 U.S. at 146. Moreover, experts must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an

4

expert in the[ir] relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). Indeed, experts who "fall short of this exacting standard" and apply less rigor to their courtroom work "will not be permitted to bring their aura of expertise into the courtroom to merely serve as 'hired guns' for their respective parties." United States v. Falcon, 245 F.Supp.2d 1239, 1243 (S.D. Fla. 2003).

In this case, Dr. Goldstein's report, and his testimony, fail to satisfy the requisite standards from Daubert and its progeny, and his testimony should be excluded from trial. Dr. Goldstein's opinions do not employ "in the courtroom the same level of intellectual rigor" as a nonlitigation expert would exercise in Dr. Goldstein's field. Kumho Tire, 526 U.S. at 152. Dr. Goldstein reaches his conclusions without having done any psychological tests or cited any literature or relevant studies bolstering his methods or his application of those methods to Plaintiff. Such practices are expected in the field and failure to adhere to them supports the exclusion of expert testimony. See Falcon, 245 F.Supp.2d at 1243 (noting that a psychiatric evaluation should include "administration of appropriate psychological tests," an "extended clinical review," and a "review of relevant empirical research related to the evaluation"); Munafo v. Metropolitan Transportation Authority, 2003 U.S. Dist. LEXIS 13495 *56 (E.D.N.Y. 2003); see also Benfield, 140 F.3d at 921 (noting that lack of testing supported exclusion of expert's opinion).

Dr. Goldstein even noted the many ways in which the honesty of a non-patient like Plaintiff can be corroborated: "Sometimes there are witness statements, sometimes I might speak to a family member or spouse who's in close contact or daily contact with that individual. Sometimes psychological testing is needed." (Goldstein Depo. pp. 34-5.) However, in this case, he admitted that he had done none, nor even tried to do any, of those things. (Id., pp. 51-2, 63-4.) He did so despite later testifying as to the "necessity" of such corroboration when dealing with the greater risk of dishonesty and malingering of civil litigants like Plaintiff when compared to patients who sought out his treatment in a clinical context. (Id., pp. 36-9.)

Dr. Goldstein even declined to review Plaintiff's deposition transcript in this case to insure her testimony was consistent with what she told him and what she told her Alabama doctors. (Id., pp. 72-3.) Even worse, despite the fact the allegations of attempted bribery and suborning perjury had been made against Plaintiff in the Declarations of Annetta Datcher [Doc. 31-5] and Cora Datcher [Doc. 31-6] months before his deposition took place, Dr. Goldstein had not been made aware of them. (Id., pp. 77-8, 96.)

Nor was he made aware of the adverse ruling against Plaintiff in <u>Frank Norton v. Dates</u>, Talladega County Circuit Court, 61-CV-2013-900279, [Doc. 30-3], in which the Court determined that Plaintiff "intended to harass, annoy and/or alarm

[co-worker] Rourke and subjected her to physical contact in the neck and throat area. Threats were made [by Plaintiff] that were verbal that escalating to carrying out the intent by the physical contact. Rourke as a reasonable person was the target of the threats and testified that she felt threatened and was fearful of dates." (Id., p. 96).

Dr. Goldstein's disinterest in obtaining corroborating and contradicting evidence is exhibited in the following testimony:

> Q. Why would you not look elsewhere for information and facts and actual determinations, add to the facts upon which you base your opinions and conclusions?
>
> A. If it's provided to me, I can study it and put in context, possibly be able to form a better judgment about whether it would change my opinion or not. It seems pretty vague at this point.
>
> Q. Has it been provided to you?
>
> A. No.
>
> Q. Have you asked that it be provided to you?
>
> A. I didn't know about it until you mentioned.
> ....
> Q. My question is, going back to staking your professional representation to some degree on backing Ms. Dates, wouldn't you want to know that?
>
> A. I don't know if I'd want to know it because there may be a relevant -- it may be very relevant or irrelevant to this proceeding. I don't know.

(Id., pp. 97-8.)

Despite the contentions of illegal or improper behavior in this litigation by Plaintiff, Dr. Goldstein also did not conduct any of the tests geared towards detecting maligning, such as the Minnesota Multiphasic Personality Inventory (MMPI) or Personality Assessment Inventory (PAI). (Id., pp. 110-11.)

Dr. Goldstein's report is instead based only on his interviews of Plaintiff, only by Skype videoconference and never in person, with no corroboration by consultation with treating physicians, family members or other individuals. Dr. Goldstein's report lists as sources of information none of the pleadings or depositions from this case, or the related unemployment compensation appeal, and neither include nor reference any testing or literature.

That approach is insufficient to demonstrate "the same level of intellectual rigor that characterizes the practice of psychiatry outside the courtroom. Kumho Tire, 526 U.S. at 152; see Munafo, 2003 U.S. Dist. LEXIS 13495 *20 (noting that information from the subject that was unverified and unsupported by any testing reflected an unacceptable "lack of scientific rigor").

Dr. Goldstein's method and description of his method falls well short of what has been deemed sufficient in other cases. For example, in Olsen v. Marriott Int'l, Inc., 75 F.Supp.2d 1052, 1056-57 (D. Ariz. 1999), the court excluded the expert's testimony because citations to various reports and studies bolstering the expert

report's conclusions were incomplete, and the report did not include evidence on the reliability of the incompletely cited reports and studies.

In Discepolo v. Gorgone, 399 F.Supp.2d 123, 124 (D. Conn. 2005), the court permitted a psychological expert's testimony because the expert had administered three psychological tests, conducted an extensive two-day interview of the patient, interviewed the patient's boyfriend and two childhood friends, analyzed other possible causes of patient's ailment, referred to "studies, articles, and books" discussing and verifying the underlying methodology and tests used, and conducted a review of "previous medical and psychotherapy records."

> Plaintiff has demonstrated to the Court's satisfaction that Dr. Pratt's methodology for diagnosing PTSD generally and as utilized in diagnosing plaintiff, particularly because coupled with the psychological testing, record review, and other interviewing, is a generally accepted methodology in the community of psychiatrists and psychologists for making a medical diagnosis . . . .

Id. In contrast, neither Dr. Goldstein's report nor his testimony come anywhere close to that level of accepted rigor.

Nor are Dr. Goldstein's opinions relevant or helpful. For expert testimony to be relevant and helpful to a jury it must be "sufficiently tied to the facts of the case [so] that it will aid the jury." U.S. v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985). Relevance requires that the offered opinion "fit" the facts; there must be a connection between the expert's opinion and the facts of the case. Moore, 151 F.3d at 276; see

also Gruma, 301 F.Supp.2d at 623 (excluding expert testimony where opinion not based on facts of the case).

An expert's proposed testimony must, at a bare minimum, "address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors." Munafo, 2003 U.S. Dist. LEXIS 13495 *56; Michaels v. Avitech, Inc., 202 F.3d 746, 753 (5th Cir. 2000) (holding that because "the plaintiff's expert made no attempt to rule out the numerous other sources of" the possible harm, the expert's testimony was not "significantly probative" on the issue of liability). For the same self-serving omissions summarized and quoted above, the failure to eliminate obvious alternative causes means that Dr. Goldstein's conclusions ultimately rest on no more than his say so. The Court should exclude such testimony founded on nothing more than Dr. Goldstein's *ipse dixit*. Benfield, 140 F.3d at 921 (holding that failure to address alternative causes and lack of testing supported exclusion of expert's opinion).

Moreover, Dr. Goldstein's testimony also will not assist the jury. The jury does not need expert testimony, or the expert's imprimatur of a clinical label to Plaintiff's alleged harm, to determine whether or not, and to what extent, Plaintiff was harmed as a result of Milo's employees' alleged behavior. See United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993) (court is well within the bounds of discretion to exclude a psychiatric expert's testimony because it was not helpful

to the jury); United States v. Esch, 832 F.2d 531, 535 (10th Cir. 1987) (court refused to allow psychologist to testify about "dependent personality").

## CONCLUSION AND PRAYER

For these reasons, Plaintiff's expert testimony should be excluded.

Respectfully Submitted,

/s/ SEAN C. PIERCE
Sean C. Pierce (ASB-2838-N53P)
Lynlee Wells Palmer (ASB-4367-T82P)
Attorneys for Defendant Frank Norton, LLC
d/b/a Milo's Hamburgers LLC

**OF COUNSEL:**
**HARBUCK KEITH & HOLMES LLC**
595 Grandview Parkway, Suite 400
Birmingham, Alabama 35243
Phone: (205) 547-5540
Facsimile: (205) 547-5621
E-mail: spierce@HKH.law
         lpalmer@HKH.law

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing pleading on counsel of record in this cause by electronic filing on this the 14th day of November, 2016.

/s/ SEAN C. PIERCE
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ISHA DATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:14-cv-01464-VEH |
| | ) |
| FRANK NORTON, LLC, d/b/a | ) |
| MILO'S HAMBURGERS, | ) |
| | ) |
| Defendant. | ) |

## ORDER REGARDING
## DEFENDANT'S DAUBERT MOTION

The Court, after considering Defendant Frank Norton, LLC d/b/a Milo's Hamburgers' Daubert Motion to exclude Plaintiff's expert Dr. Robert Goldstein, and after hearing from the parties, finds that the motion should be:

_____  GRANTED            _____  DENIED


_____
Virginia Emerson Hopkins
United States District Court Judge