FILED
2016 Nov-14  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

DIPLOMATE OF THE AMERICAN BOARD OF
PSYCHIATRY AND NEUROLOGY

CLINICAL PROFESSOR OF PSYCHIATRY
COLLEGE OF PHYSICIANS &
SURGEONS OF COLUMBIA UNIVERSITY

ROBERT LLOYD GOLDSTEIN, M.D., P.C.

████████████████████████
████████████████████████
‑‑‑‑‑‑
████████████████
████████████████████████
████████████████

March 23, 2015

Joshua Friedman, Esq.
1050 Seven Oaks Lane
Mamaroneck, NY 10543

**Re: Isha Dates**

Dear Mr. Friedman:

I am writing to you at this time in order to report my findings and conclusions after completing my psychiatric examination of your client, **Isha Dates**. I conducted a comprehensive psychiatric examination of Ms. Dates on May 31, 2013. I conducted a follow-up psychiatric examination on March 21, 2015.  In addition to my psychiatric examinations, I also had occasion to review and analyze relevant materials pertaining to her case, including her mental health records. (A complete list of the relevant materials I reviewed and analyzed is set forth in the Appendix.) My conclusions in this case, to a reasonable degree of psychiatric certainty, are based on my psychiatric examinations and my review and analysis of the relevant materials.

Ms. Dates is a 33-year-old African-American woman who alleges that she was the victim of racial and sexual discrimination and harassment, as well as

retaliation while employed as a cashier at Milos Burgers between August 6, 2012 and November 21, 2012. She alleges that, soon after she began to work at the job, she was sexually harassed and intimidated on an ongoing basis by Carmen Miles, an assistant manager at the store. She claims that Carmen made unwelcome sexual comments, constantly asked her out, frequently touched her on the breasts and buttocks, at every opportunity rubbed her body against her, and followed her to her car. She says she repeatedly told Carmen this behavior was unwelcome and offensive and asked her to stop. She claims that her continuing rejection of Carmen's overtures resulted in a reduction of the hours she was assigned to work (since Carmen controlled the scheduling). She says she repeatedly complained about the offensive behavior to her superiors, but they either brushed off her complaints or didn't respond to her calls. Consequently, she says no corrective action was undertaken and the alleged harassment continued unchecked, which made her feel emotionally distressed, frustrated, and helpless. She says that other employees witnessed Carmen's harassing behavior toward her. She claims that after she filed an EEOC complaint, she was fired on a pretext in November 2012. She has been unable to find employment since she was fired, which has caused significant financial difficulties. (For example, her truck was repossessed and she recently had to move because of difficulty paying her rent.) She feels she is unable to return to work now because of the combination of her medical and psychiatric difficulties and has applied for Social Security Disability benefits. As a result of the constant emotional traumatization and psychological stress caused by the alleged racial

and sexual discrimination, harassment, and retaliation, she says she has suffered clinically significant emotional distress, persistent psychiatric symptoms, and difficulty functioning. (See below)

Ms. Dates was born in Ohio. Her parents separated when she was a baby and she was raised by her mother. She had ongoing contact with her father while growing up. She is one of 16 children. Her mother, age 52, is a home health aide. Her father, who died at age 72, was a retired funeral home worker. There is no history of childhood physical or sexual abuse. She had a normal happy childhood, was in good health, had many friends, and took part in age-appropriate peer activities. There is no family history of psychiatric illness.

Ms. Dates graduated from high school where she was an above- average student and active in a number of extracurricular activities, *e.g.* the school band and playing softball. She worked regularly at various jobs, *e.g.* as a cashier in a clothing store and as a fast food worker, before she was hired by Milos Burgers.

Ms. Dates's past medical history includes a painful neck and back condition, fibromyalgia, carpal tunnel syndrome, and a tubal ligation. She says that the relentless harassment caused stress-related severe migraine and tension headaches and aggravated her back pain. She does not abuse alcohol or drugs. She had no prior history of psychiatric difficulties or treatment before the alleged sexual harassment described above. Her primary care doctor has prescribed antidepressants for her. There are notes throughout his records about her fighting a sexual harassment charge, being fired from work, depression, anxiety, being "stressed out," insomnia, and headaches. She sought treatment at

the Cheaha Mental Health Clinic in March 2013 for persistent psychiatric symptoms. Her psychiatric records make note of her encountering problems at work, specifically sexual harassment, and document the presence of depression, a sense of helplessness, anxiety, insomnia, irritability, hallucinations, and suicidal ideation. She has continued in treatment at the clinic with psychotherapy (individual and group) and a medication regimen of antidepressants and anti-anxiety agents. Her diagnoses are **Major Depressive Disorder** and **Anxiety Disorder Not Otherwise Specified (Generalized Anxiety Disorder and Panic without Agoraphobia)**.

Ms. Dates lives with her four children, ranging in age from 6 to 16. She is a single mother and says the stress she experienced at work caused her to become short-tempered and irritable with the children. Her mother, who lives nearby, helps her with routine household chores and child care. She had a steady boyfriend, but they recently broke up.  She says their relationship had become increasingly strained because she was always moody, depressed, and irritable. She has become extremely socially isolated and has no motivation to see friends or participate in social activities. She spends most of her time at home and goes out only to shop or attend medical/psychiatric appointments.

Her mental status remains unchanged over the course of my two examinations. This is a tense, sad-looking woman who is cooperative and forthcoming. There is no thought disorder. Her affect and mood are pervasively anxious and depressed. She cries and feels hopeless. She has panic attacks 2-3 times a day, accompanied by shortness of breath, dizziness, lightheadedness,

4

and chest discomfort. She is frequently irritable and short-tempered. Her sleep is very poor, with intermittent nightmares about dying. She frequently has distressing, intrusive thoughts about the alleged harassment at work. She hears voices almost daily telling her she is worthless. She has paranoid thoughts about people from Milos coming to get her. She has diminished appetite and her energy is low. She has suicidal ideation at times, with thoughts about driving off a bridge to "end it all." When she leaves home, she is hyper-vigilant, on guard and looking over her shoulder, fearing that someone from Milos may want to harm her. Her concentration and short-term memory are somewhat impaired. She has feelings of worthlessness. Her self-esteem and self-image have been damaged.

In view of my findings, I have reached the following conclusions in this case to a reasonable degree of psychiatric certainty:

1. Ms. Dates is suffering from a serious psychiatric condition. Her diagnoses are i) **Major Depressive Disorder, Severe, with Psychotic Features (and with Posttraumatic Features)** and ii) **Panic Disorder.** Her prognosis is poor. Her condition has been refractory to ongoing psychiatric treatment.

2. As a result of her condition, she continues to experience clinically significant emotional distress and has exhibited a decline in functioning in a number of important areas.

3. In my differential diagnosis, I have considered and ruled out a medical condition as the cause of her psychiatric condition. Likewise, I have

considered and ruled out malingering as the cause of her psychiatric condition.

4. Her condition is directly and causally related to the traumatic stress she experienced as a result of her perceptions of racial and sexual discrimination and harassment, as well as retaliation at work (as described above).

5. She requires long-term psychiatric treatment to attempt to resolve her distressing psychiatric symptoms, stabilize her condition, improve her level of functioning, and prevent further deterioration. Her treatment should have two components: i) psychotherapy with a social worker or psychologist once a week for a minimum of two years, with reassessment of her needs at that point; and  ii) medication management by a psychiatrist at monthly intervals for a minimum of two years, with reassessment of her medication needs at that point. (Indicated medications are a generic antidepressant, a generic anti-psychotic medication, and a generic benzodiazepine tranquillizer).

Very truly yours,

Robert Hoy & Goldstein

ROBERT LLOYD GOLDSTEIN, M.D.

Clinical Professor of Psychiatry
College of Physicians & Surgeons
COLUMBIA UNIVERSTY

RLG:in

6

Isha Dates

## Appendix

**Cheaha Regional Mental Health Center Records**
**Sylacauga Family Health Center Records**
**Alabama CVS Pharmacy Patient Prescription Record**
**EEOC Records**

7

# ROBERT LLOYD GOLDSTEIN, M.D., P.C.



Dr. Goldstein is Clinical Professor of Psychiatry at Columbia University's College of Physicians and Surgeons, where he has served for over 20 years as Director of the "Legal Issues in the Practice of Psychiatry" Course. He was formerly Director of Outpatient Psychiatric Services at the New York VA Medical Center, Deputy Director of the NYU-Bellevue Forensic Psychiatry Service, Medical Director of the Forensic Psychiatry Clinic of the New York State Supreme Court (New York County), Director of Psychiatry at New York-Presbyterian Lower Manhattan Hospital, and Director of Psychiatric Education, Research, and Quality Assurance at Long Island College Hospital. He is a Board-Certified Diplomate in Psychiatry of the American Board of Psychiatry and Neurology, a Distinguished Life Fellow of the American Psychiatric Association, and an Officer of the Tri-State Chapter of the American Academy of Psychiatry and the Law. He received Postgraduate Fellowship Training in Child and Adolescent Psychiatry at NYU-Bellevue and in Psychoanalytic Psychotherapy at Hillside Hospital.

Dr. Goldstein has authored over 85 publications in leading professional journals and authoritative texts, including The American Journal of Psychiatry, Psychiatric Clinics of North America, The Journal of the American Academy of Psychiatry and the Law, The New England Journal of Medicine, The Harvard Medical School Mental Health Letter, The Journal of Forensic Sciences, Behavioral Sciences and the Law, The Journal of Legal Medicine, Psychiatric Annals, Principles and Practice of Forensic Psychiatry, Critical Issues in American Psychiatry and the Law, International Handbook on Psychopathic Disorders and the Law, and Clinical Handbook of Adolescent Addiction. He is a leading authority on the Insanity Defense, Competency, Confidentiality, Diminished Capacity, Extreme Emotional Disturbance, Stalking, Erotomania and other Paranoid Disorders, and Adolescent Addiction. He served as Chairman of the Special Colloquium of Judges and Psychiatrists (under the auspices of the Hunter College Trial Judges' Institute) for over 10 years, as a Psychiatric Consultant to the New York City Police Department's Psychological Services Unit, and on panels of the New York State Office of Professional Medical Conduct.

Dr. Goldstein treats and evaluates patients in his private office practice in Manhattan. From time to time, he is called on as a psychiatric consultant and expert witness in civil and criminal cases by governmental agencies and private law firms. He has been qualified as a psychiatric expert in various jurisdictions nationwide in both State and Federal Courts.