# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ISHA DATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:14-cv-01464-VEH** |
| | ) | |
| **FRANK NORTON, INC.,** | ) | |
| **d/b/a MILO'S HAMBURGERS** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## Plaintiff's Memorandum of Law In Opposition to
## Defendant's Motion in Limine Twelve

Law Offices of Joshua Friedman
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel: 888.369.1119 x 7
Fax: 866.731.5553
*Admitted Pro Hac Vice*

The Law Offices of Jessica Fleming,
LLC
4000 Eagle Point Corporate Drive
Birmingham, AL 35242
Telephone:  (1-205-991-1720)
*Local Counsel*

*For Plaintiff Isha Dates*

Defendant moves *in limine* to exclude evidence concerning back pay and front pay, and to exclude evidence regarding punitive damages until there has been a liability finding.

I.      Front and Back Pay

First, Milo's argues that the Court and not the jury determines the amount of any back and front pay awards. In a straightforward case where front and back pay damages are driven solely by the length of Plaintiff's reasonable actual and anticipated job search, Plaintiff agrees. However, Milo's concedes, as it must, that "Title VII claimants are entitled to an award of backpay where the defendant's discriminatory conduct caused the plaintiffs disability," MOL 12 at 3-4, citing *Lathem v. Dept. of Children and Youth Services,* 172 F.3d 786, 794 (11th Cir. 1999).

In *Lathem,* the jury found that Plaintiff was subjected to sexual harassment and disparate discipline. The District Court awarded back pay for the period Lathem was unable to work, due to a disability which was caused by the sexual harassment and discrimination. The Eleventh Circuit affirmed, where "The district court, after reviewing all the evidence, specifically found that DCYS's conduct caused Lathem's disability and that this disability precluded her from obtaining other employment. *Id.* The Eleventh Circuit further pointed out that "the mitigation requirement does not apply to a Title VII plaintiff where the defendant's discriminatory conduct resulted in the disability that prevents the plaintiff from finding other employment." *Id*

Plaintiff began treatment with her Internist for depression immediately after being fired from Milo's. His records show that she was upset about sexual harassment and retaliation at work. He prescribed anti-depressants. In March her Internist referred her to Cheaha Mental Health Clinic. Their records also document the psychiatric problems she was experiencing as as result of her experiences at Milo's, a diagnosis of Major Depressive Disorder and Anxiety Disorder Not Otherwise Specified (Generalized Anxiety Disorder and Panic without Agoraphobia), and prescription of anti-depressants and anti-anxiety medications.

Plaintiff identified Robert Lloyd Goldstein, MD, JD, as an expert witness. He is a psychiatrist. He examined Plaintiff in March 2013 and again in March 2015. In his Report, Exhibit 1 hereto, he notes:

> She has panic attacks 2-3 times a day, accompanied by shortness of breath, dizziness, lightheartedness, and chest discomfort. She is frequently irritable and short-tempered. Her sleep is very poor, with intermittent nightmares about dying. She frequently has distressing, intrusive thoughts about the alleged harassment at work. She hears voices almost daily telling her she is worthless. She has paranoid thoughts about people from Milo's coming to get her. She has diminished appetite and her energy is low. She has suicidal ideation at times, with thoughts about driving off a bridge to "end it all." When she leaves home, she is hyper-vigilant, on guard and looking over her shoulder, fearing that someone from Milo's may want to harm her. Her concentration and short-term memory are somewhat impaired.

Plaintiff will seek to introduce the forgoing into evidence, as well as Dr. Goldstein's opinions that Plaintiff suffers from:

> i) Major Depressive Disorder, Severe, with Psychotic Features (and with Post-traumatic Features) and ii) Panic Disorder. Her prognosis is poor. Her condition has been refractory to ongoing psychiatric treatment.

> Her condition is directly and causally related to the traumatic stress she experienced as a result of her perceptions of racial and sexual discrimination and harassment, as well as retaliation at work
>
> She requires long-term psychiatric treatment to attempt to resolve her distressing psychiatric symptoms, stabilize her condition, improve her level of functioning, and prevent further deterioration.

Exhibit 1 at 5-6.

If Plaintiff is allowed to introduce the foregoing, the jury will decide whether Milo's conduct caused Plaintiff injury, and possibly whether and when it caused her to be too disabled to work. The jury may also be called upon to decide what her prognosis is, ie, whether her disability is permanent, and if not, how long it will persist.

Given the foregoing, Plaintiff asks this Court to reserve decision as to what aspects of the determination of back and front pay will be for the Court or the jury.

Second, Defendant argues that Plaintiff should not be permitted to introduce evidence concerning entitlement to back or front pay because she applied for Social Security Disability ("SSDI") on March 6, 2013.  Def. Mem. 3. This argument becomes moot if the jury finds Milo's caused Plaintiff's disability.

It is also misinformed, and premature. In *Soliday v. 7-Eleven, Inc.,* 2011 U.S. Dist. LEXIS 42870 (M.D. Fla. Apr. 20, 2011), the court denied a motion in limine made on similar grounds: that application for SSDI benefits estopped Plaintiff from seeking front and back pay in an ADA case. The *Soliday* court explained that:

> The Supreme Court held that to defeat a summary judgment motion, a plaintiff who has applied for and received Social Security Disability Insurance benefits must make an explanation as to the apparent

inconsistency between his prior claim that he was totally disabled and his current claim that he was a qualified individual who could perform the work with or without an accommodation. The explanation must be sufficient to warrant a reasonable juror's conclusion that, assuming the truthfulness and good faith belief in plaintiff's earlier statement of total disability, plaintiff could nonetheless perform the essential functions of his job, with or without a reasonable accommodation.[1]

*Id.,* 2011 U.S. Dist. LEXIS 42870, at *3-4

The instant situation is not materially different. Plaintiff should be entitled to a reasonable accommodation for her disability at any employer offering work, where she can perform the core duties of the job. The *Soliday* court concluded, in denying Defendant's motion in limine, that:

Application for and receipt of Social Security disability benefits does not automatically preclude plaintiff from recovering under the ADA. Depending upon its evaluation of the evidence, a jury could find a plaintiff to have been and to be a qualified individual with a disability when given a reasonable accommodation, and therefore eligible for monetary damages after application for and receipt of Social Security disability benefits.

*Id.* at * 4. *Accord DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 104 (2d Cir. 2010)("The statement 'I am disabled' on an SSDI application should generally be taken as a statement that 'I am disabled for the purposes of the Social Security Act.'").[2]

Plaintiff's SSDI application claimed that (without accommodations), she was

---

1 *Citing Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805-06, 119 S. Ct. 1597, 143 L. Ed. 2D 966 (1999). As discussed infra, in the event that the jury concludes that Plaintiff became disabled as a result of Defendant's illegal conduct, it will not have to determine whether Plaintiff was still able to fulfill the core duties of a job.

2 *See also Jernigan v. Dalton Mgmt. Co.,* LLC, 819 F. Supp. 2d 282 (SDNY July 29, 2011)("In determining whether statements made in the SSDI context are consistent with [*289] those made in the ADA context, 'the court must undertake a fact-specific analysis of whether the claims made in the SSDI application directly contradict the allegations made in the ADA context.'" citation omitted); *Van Rossum v. Balt. Cnty.,* 2016 U.S. Dist. LEXIS 45723 (D. Md. Apr. 4, 2016)(accord)

unable to function as of March 6, 2013, sufficiently to work, due to "mental health problems, lbp [lower back pain], legs, wrist and headaches." See Exhibit 2, the first page of her SSDI application. Her application included all relevant physicians' records. Without an evaluation of what exactly these records showed she was incapable of doing, under the foregoing authorities, Plaintiff cannot be precluded from seeking back and front pay (assuming arguendo, the jury does not find that Milo's caused her disability).

Finally, Defendant argues evidence concerning front pay should be excluded because "the plaintiff is ineligible for a front pay award because of her apparent failure to mitigate damages." Def. Mem. 5. "The failure to mitigate one's damages is an affirmative defense[.]" *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1347 (11th Cir. 2000). Therefore, Defendant is essentially asking for a judgment as a matter of law from the Court, via its Motion in Limine, holding that it has proven its affirmative defense of failure to mitigate. This is improper. Evidence concerning front pay should be presented at trial, where Defendant will bear the burden of proving its affirmative defense of failure to mitigate.

## II. **Punitive Damages**

Defendant's Motion boils down to three arguments as to why the Court should exclude evidence relating to punitive damages: 1) the evidence in the record cannot "support a finding of malicious, or egregious, or reckless conduct of any sort" sufficient to prove entitlement to punitive damages (Def. Mem. 7), 2) it is " improper" for the jury

to consider evidence on punitive damages until there is a finding that Plaintiff is entitled to compensatory damages (Def. Mem. 7), and 3) punitive damages are only available if there was corporate (as opposed to individual) wrongdoing (Def. Mem. 8).  On their face, Defendant's arguments 1 and 3 are merely requests for the Court to issue a dispositive ruling, holding that the evidence in the record is insufficient for Plaintiff to maintain a claim for punitive damages.  Plaintiff will bear the burden of proving her claim for punitive damages at trial, which will require her to show that Defendant company's conduct meets the requisite standard.  Defendant cannot short-circuit this inquiry by asking the Court to issue a dispositive ruling that Plaintiff is incapable of making such a showing, via a Motion in Limine.

With respect to Defendant's argument 2, that the jury should not consider "any evidence relating to punitive damages unless and until [the jury] finds that Milo's is liable to the plaintiff[,]" Defendant is essentially asking the Court to bifurcate trial, since that would be the effect of such a ruling.  There is no automatic entitlement to bifurcation simply because Defendant contends it would be "improper[]" for a jury to consider any evidence regarding punitive damages prior to a liability ruling.  *See, e.g., Valdes v. Miami-Dade Cnty.*, 2015 U.S. Dist. LEXIS 155196 (S.D. Fla. Nov. 17, 2015) ("The plaintiff argues that the trial should be bifurcated because evidence of the officers' financial condition is relevant to punitive damages, but not relevant to compensatory damages.  The plaintiff has not provided sufficient justification for bifurcating damages

in the instant case.  The jury can properly be instructed to consider financial and net worth evidence if it determines punitive damages are warranted.").  As the Northern District of Alabama has explained, "[e]ven accepting [a] defendant's argument that liability and damages are unrelated, the observation that a jury determination of no liability would eliminate the need for a trial on damages is true in any negligence case – it does not advance the cause of bifurcation."  *Andazola v. Logan's Roadhouse, Inc.*, 2013 U.S. Dist. LEXIS 60541, *11-12 (N.D. Ala. Apr. 29, 2013) (internal citation omitted).  As in *Valdes*, the court explained that limiting instructions were sufficient to prevent any risk of prejudice from "introducing evidence of plaintiff's emotional distress and defendant's financial condition before the jury decides the issue of liability[.]"  *Andazola*, 2013 U.S. Dist. LEXIS 60541 at 12.

Defendant's citations to out-of-circuit caselaw are unavailing.  Defendant cites *Sawyer v. Southwest Airlines Co.*, 2003 U.S. Dist. LEXIS 5419 (D. Kan. Mar. 31, 2003), to support its argument that is "improper for juries to being [sic] considering the issue of punitive damages....before the plaintiff has established that she is entitled to compensatory damages."  Def. Mem. 7.  *Sawyer* says nothing of the sort: rather, that court held specifically that the plaintiff needed to establish a "submissible case on the question of punitive damages" at trial, by submitting evidence showing the plaintiff's entitlement to punitive damages, before the court would permit submission of evidence specifically concerning defendant's "financial condition and history."  *Sawyer*, 2003 U.S.

Dist. LEXIS 5419 at *4-5.  Defendant in the instant case is not moving merely to

exclude evidence of its financial condition; it is asking to exclude <u>any</u> discussion

whatsoever of entitlement to punitive damages until there has been a liability ruling,

which is a completely different scenario.  The only other case cited by Defendant on this

point, *Williams v. Betz Lab.*, holds similarly.  *Williams v. Betz Lab.*, 1996 U.S. Dist.

LEXIS 3045 (E.D. Penn. Mar. 14, 1996) ("Before evidence of the <u>financial condition or

net worth</u> of defendant [] is admissible, this Court must determine the legal sufficiency

of plaintiff's claim for punitive damages, which must await trial.") (emphasis added).

Wherefore, Plaintiff respectfully requests that Defendant's motion be denied.

Dated: November 23, 2016
     Mamaroneck, NY

      /s/ Joshua Friedman
By: Joshua Friedman
Law Offices of Joshua Friedman
Counsel for Plaintiff
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel: 888.369.1119 x 7
Fax: 866.731.5553
josh@joshuafriedmanesq.com
*Admitted Pro Hac Vice*

Local Counsel:

The Law Offices of Jessica Fleming, LLC

By:   /s/ Jessica Fleming
Jessica Fleming
4000 Eagle Point Corporate Drive

Birmingham, AL 35242
Telephone:   (1-205-991-1720)
*Jessica@jessicafleminglaw.com*

## CERTIFICATE OF SERVICE

I, JOSHUA FRIEDMAN, certify that on this 23rd day of November 2016, I served a copy of the foregoing on counsel for Defendant by filing same with the Court's ecf-filing system, which automatically generates a notice of service.

   Joshua Friedman   
Joshua Friedman