FILED
2016 Nov-23  PM 08:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **ISHA DATES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 1:14-cv-01464-VEH** |
| | ) |
| **FRANK NORTON, INC.,** | ) |
| **d/b/a MILO'S HAMBURGERS** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

### Plaintiff's Memorandum of Law In Opposition to Defendant's Daubert Motion to Exclude Dr. Goldstein

Law Offices of Joshua Friedman
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Tel: 888.369.1119 x 7
Fax: 866.731.5553
*Admitted Pro Hac Vice*

The Law Offices of Jessica Fleming,
LLC
4000 Eagle Point Corporate Drive
Birmingham, AL 35242
Telephone:  (1-205-991-1720)
*Local Counsel*

*For Plaintiff Isha Dates*

## I.  INTRODUCTION

Plaintiff's expert, Dr. Goldstein, M.D., J.D., should be permitted to testify as to inter alia Plaintiff's psychiatric condition and to his medical opinion that it was caused by her experience at Milo's. Defendant filed a *Daubert* motion to exclude Dr. Goldstein as a testifying expert, arguing that he is not sufficiently qualified and his proposed testimony is not sufficiently reliable or relevant. Defendant's motion should be denied: its conclusory assertion that Goldstein is not qualified is easily rejected; to the extent it nominally contends Dr. Goldstein's opinion is not sufficiently reliable, its substantive argument goes to weight not admissibility. Dr. Goldstein is a board certified psychiatrist, who has been a clinical professor at Columbia University and in private practice for decades. His qualifications are described more fully below. Moreover, his opinion, based on his experience, in depth interviews of Plaintiff Dates, and review of relevant records, is admissible because the techniques are well accepted and the jury will benefit from expert testimony. Defendant's motion is due to be denied.

## II. STANDARD OF REVIEW

This Court has explained that in evaluating expert testimony, the following analysis, outlined by the Eleventh Circuit, applies:

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Fed.R.Evid. 702. The court should engage in a three-prong inquiry, considering whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

*Leo v. Alfa Mut. Ins. Co.*, No. 1:13-CV-1826-VEH, 2016 U.S. Dist. LEXIS 40102, at

*14-20 (N.D. Ala. Mar. 28, 2016)(Hopkins, J.), quoting *United States v. Wilson*, No. 12-

14449, 634 Fed. Appx. 718, 2015 U.S. App. LEXIS 21756, 2015 WL 8956435, at *15

(11th Cir. Dec. 16, 2015).

## III.   DR. GOLDSTEIN IS QUALIFIED

In *Leo,* this Court rejected an objection to an expert's qualifications where "[i]n a

conclusory fashion, specifically one sentence of its motion," defendant "merely states"

the proposed expert is "not qualified to give admissible testimony under Fed. R. Evid.,

Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct.

2786, 125 L. Ed. 2d 469 (1993)." *Leo,* 2016 U.S. Dist. LEXIS 40102, at *17. The Court

found that "[t]his argument is not further developed," and for that reason was due to be

denied. *Id.* This Court nevertheless also evaluated the expert's qualifications. *Id.* Again

citing the Eleventh Circuit, this Court noted explained that:

experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, experience, training, or education." (emphasis added). The Committee Note to the 2000

Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone ... may not provide a sufficient foundation for expert testimony." Fed.R.Evid. 702 advisory committee's note (2000 amends.).

*Id.,* at \*16-17, quoting *Frazier,* 387 F.3d at 1260-61 (emphasis in original).

Applying the *Frazier* standard, the Court then evaluated the proposed expert's years of experience, and legal career. *Leo,* at \*16-19. Looking at his qualifications under Fed. R.Evid. 702 "by [(1)] knowledge, [(2)] skill, [(3)] experience, [(4)] training, or [(5)] education," the Court found the expert was qualified. *Id.,* at \*20 (evaluating admissibility of expert opinion at summary judgment).

Here, the extent of Defendant's challenge to Dr. Goldstein's "qualifications" is an introductory sentence, which argues in wholly conclusory fashion that Plaintiff "fails to meet her burden to show that Dr. Goldstein is qualified, ..." Dkt. 73, p. 2. Like in *Leo,* this unsupported assertion should be rejected and to the extent Defendant is arguing that Dr. Goldstein is not qualified, its motion should be denied.

Moreover, Dr. Goldstein is well qualified to offer an expert psychiatric opinion. He is a medical doctor who is board certified in psychiatry. For five or six years, he was the director for outpatient psychiatry at the Manhattan VA where he treated and supervised the treatment of thousands of veterans who were suffering from PTSD.  He was Director of a court clinic in the Supreme Court in Manhattan. He was Deputy Director of the Bellevue Forensic Psychiatry Service.  He has a J.D. From Columbia Law School.  He is a Clinical Professor of Psychiatry at Columbia University where he

4

has taught for over 20 years and has served as the Director of the "Legal Issues in the Practice of Psychiatry" course for over 20 years. He has a private practice, specializing in psychiatry. He has written extensively in the field of psychiatry, including as a section editor for a textbook of forensic psychiatry, coming out in its third edition, of which he has authored four of ten chapters. He is writing for "the International Handbook of Psychopathy and the Law," among many other publications. Goldstein Dep., Dkt. 73-2, pp. 16-25. His curriculum vitae identifies 85 publications in the field of psychiatry and forensic psychiatry, and 68 presentations in the field, in addition to elaborating on his training and experience.  Exh. 1. Thus, coupled with Defendant's failure to mount any actual challenge to Dr. Goldstein's qualifications, who defense counsel referred to as being "at a very high point of [his] career," (dkt. 73-2, p. 48), Dr. Goldstein is well qualified to offer expert testimony as to Plaintiff's psychiatric condition and causation, and his testimony should be admitted. *See also, Redmond v. City of E. Point,* 2004 U.S. Dist. LEXIS 31631, at *11-29 (N.D. Ga. Mar. 26, 2004) (examining expert's qualifications, where expert had years of clinical experience, diagnosed and treated hundreds of patients, and was familiar with relevant literature, he was qualified as an expert even though he had not lectured on sexual harassment in the workplace, had not conducted his own studies on diagnosis PTSD in connection with sexual harassment, and was not experienced in serving as a testifying expert, because experience may provide sufficient qualifications for admission, and the fact that someone may not be a

'specialist' in an area goes to weight not admissibility).

In the just past four years, 22 trial courts have found him qualified to testify in his field of expertise.  See Exh. 2.

## IV.   DR. GOLDSTEIN'S METHODS ARE RELIABLE

Dr. Goldstein's methods are reliable. Dr. Goldstein conducted a standard, comprehensive psychological examination, and conducted a follow up examination two years later, reviewed available medical records including psychiatric records, and reviewed other pertinent documents, [dkt 73-1] which has been held to be a sufficiently reliable methodology to permit his expert testimony. *United States v. Sturman*, 96 Cr. 318 (BSJ), 1998 U.S. Dist. LEXIS 3488, at *5-7 (S.D.N.Y. Mar. 19, 1998) ("Here, the proffered expert testimony involves psychiatry, which is hardly a 'junk science.' Moreover, Dr. Goldstein's credentials are unchallenged by the Government. Finally, … Dr. Goldstein relied on five hours of interviews with Schwartz, a review of records including Dr. Drob's report, and conversations with health professionals who treated Schwartz in the past.") (quotations omitted). The Court acknowledged in *Sturman* that psychiatrists customarily use such information to form opinions as to an individual's current or past mental state. *Id., citing United States v. Lawson*, 653 F.2d 299, 302 n.7 (7th Cir. 1981) (taking judicial notice that such diagnosis is standard), cert. denied, 454 U.S. 1150, 71 L. Ed. 2d 305, 102 S. Ct. 1017 (1982); Fed. R. Evid. 703 advisory committee's note (noting that physicians typically base diagnoses "on information from

numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, [and] hospital records").

In *United States v. Sturman,* where there was no "affidavit or other evidence to suggest that the methodology underlying Dr. Goldstein's diagnosis [wa]s scientifically invalid in this case--and there ha[d] been absolutely no such evidence proffered by the Government--the Court conclude[d] that Dr. Goldstein's testimony [wa]s admissible." Similarly, here, there has been no affidavit – such as by a rebuttal expert – or other evidence to show that Dr. Goldstein's in depth psychiatric examination and follow up examination, and review of medical records, including psychiatric treatment records and pharmacy records, as well as other materials in the case, is of such unreliable methodology as to warrant wholesale preclusion of Dr. Goldstein's testimony. Indeed, Defendant did not retain an expert for any purpose in this case, whether to offer a different opinion as to Ms. Dates' psychiatric condition, a different opinion on causation, or to attack Dr. Goldstein's methodology. Thus, the basis of Defendant's argument is solely citations to caselaw, none on all fours with the instant case.

Defendant's sole challenge to his methods is an argument that Dr. Goldstein did not conduct psychological tests, or take certain actions to corroborate Ms. Dates honesty.[1] However, Milo's has done nothing to actually challenge Dr. Goldstein's

---

1  In fact, Dr. Goldstein testified that medical records corroborated his findings and conclusions. Dkt. 73-1, p. 39/18-40/18.

diagnosis or conclusions in this case whatsoever. Defendant never questioned Dr. Goldstein as to how he came to the diagnosis of Major Depressive Disorder and Anxiety Disorder Not Otherwise Specified. See generally, Dkt. 73-2. Dr. Goldstein, unlike the treating physician in *Munafo, infra,* explored and through the use of differential diagnosis, ruled out a medical condition, or malingering, as a cause of her psychiatric condition. Dkt. 73-1, p. 5. Milo's never questioned him as to his opinion on causation. Where Dr. Goldstein's methodology and testimony has previously been admitted over a *Daubert* motion, and where Defendant has not shown that his methodologies have led or would lead to unreliable evidence, Milo's motion should be denied.[2]

Further, conducting psychological testing is not necessary. *Redmond v. City of E. Point*, 2004 U.S. Dist. LEXIS 31631 (N.D. Ga. Mar. 26, 2011). As the Court held in *Redmond,* "Given problems inherent with psychological testing, Dr. Davis had a rational basis to decided that such tests were unnecessary." *Id.,* at *23. "[E]xperts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." *Id*., quoting *Cooper,*. 211 F.3d at 1020.

Here, Dr. Goldstein was asked few questions by Defendant about psychological testing, and Dr. Goldstein explained why "objective" psychological testing was not necessary and why it is often unreliable:

---

2   To the extent the Court has any questions about his methodologies, Plaintiff respectfully requests a *Daubert* hearing.

16          Q.    We talked earlier about malingering
17    and you expanded on, and I appreciate that, my
18    understanding of its definition.
19          Is there any way to test to see if a patient
20    or a client is malingering?
21          A.    Well, there are certain psychological
22    tests that purport to shed some light on whether
23    that is a malingering scale in the M[M]PI, or maybe
24    there are some other psychological tests.   But
25    many of them have been discredited for having a
 2    very large number of false positive findings, and
 3    I don't find that they are too useful, maybe
 4    they're counterproductive.
 5          Q.    What is a PAI?
 6          A.    The PAI, I have seen that somewhere.
 7          Q.    Personality Assessment Inventory.
 8          A.    That's probably one of the tests that
 9    purports to measure malingering.   I think it's one
10    of the tests.
11          Q.    Have you ever utilized or relied on a
12    PAI before?
13          A.    You know, from time to time, cases
14    come up where psychological testing is done.  I
15    never use it to just look for malingering because
16    of the false positive findings with these tests,
17    but maybe some other reason for the psychological
18    test.

Goldstein Dep., pp. 110-111, Exhibit 2. His professional and experienced decision not to

use such tests is not a reason to bar his testimony. *Redmond,* at **22-23. Defendant is

free to cross-examine Dr. Goldstein about it, but it is not a basis for exclusion. *Foreman*

*v. Am. Rd. Lines, Inc.*, 623 F. Supp. 2D 1327, 1335-36 (S.D. Ala. Dec. 16, 2008)

(denying *Daubert* motion to exclude expert testimony where psychologist's opinion,

based on clinical observations, and professional judgments differed from test results,

finding that there was no reason to believe the doctor's methodology was unreliable or differed materially from methodology applied by clinicians in the psychological field every day, and was not "mere 'ipse dixit'" simply because the opinion deviated from objective testing); *Redmond, supra*, (weight not admissibility). Using clinical judgment does not render a psychological opinion a "speculative guess;" if it did, "then precious few expert witnesses in the social sciences would ever be allowed to testify in federal court." *Foreman,* at 1336, citing *In re Viagra Products Liability Litigation,* 572 F.Supp. 2D 1071, 1088 (D. Minn. 2008) ("Expert testimony may be based either on professional studies or personal experience …").

Defendant's citation to *United States v. Falcon* is unpersuasive and inapposite in connection with reliability of Dr. Goldstein's methods in this case. 245 F.Supp.2d 1239, 1243 (S.D.Fla. 2003). In *Falcon,* a criminal case, the government moved to exclude a psychologist's testimony. The expert was expected to testify generally about personality disorders, how a key government witness exhibited narcissistic personality disorder, "personality structure as it [a]ffects Ms. Bonachea's representation of her recall, description, and accounting of events in her personal history," "personality and psychological symptoms and their effect on Ms. Bonachea's cognitive and emotional functioning," and how they affected her ability to exercise judgment, and her symptoms as they relate to capacity to distinguish truth from fantasy--areas well beyond the scope of Dr. Goldstein's proffered testimony. *Id.,* at 1252.

10

First, the Court explicitly noted that the proposed expert had never testified in a criminal trial before, and had only testified as an expert in sexual harassment and discrimination cases, "where emotional distress and damages are at issue." *Id.,* at 1243. "None of these cases are remotely applicable to this criminal case or the general propriety of admitting testimony of an expert's diagnosis of a government witness as having personality disorders based on observing four hours of testimony in another trial, reviewing transcripts of the witness' prior testimony, and some medical records." *Id.*, at 1243, n.1. On that basis alone, *Falcon* is inapt.

Moreover, in that case, where the proposed expert sought to testify about a *witness*, the Court noted that the same expert/psychologist in another matter had averred that "the usual standard of practice for a forensic psychiatric or psychological evaluation for use by the Courts in South Florida (as elsewhere) is governed by both ethical guidelines and *specific statutory requirements,*" and that "such an evaluation *should* include (a) the administration of appropriate psychological tests, (b) conducting an extended clinical interview, (c) the gathering of data from collateral sources of information (whether by review of relevant documents or interviews with witnesses, or both), (d) a review of relevant empirical research related to the evaluation issue, and (e) the preparation of an expert report, per the local rules governing the admissibility of experts' opinions." *Id.,* at 1243 (emphasis added). Thus, the same expert being offered had testified to the requirement of using a different methodology that he had not

employed.

Here, Defendant has not identified specific statutory requirements that require psychological tests in Alabama (although it is notable that even the proposed expert in *Falcon* identified the requirement of "appropriate" psychological tests, which presumably could mean that none is appropriate). Importantly, the proposed expert never examined the witness in person: he looked at examinations of the witness in prior trials, looked at medical records, and observed her live testimony in another case. He never conducted a clinical interview at all. *Id.* at 241-42. This was of great concern to the Court in excluding his testimony, where a review of the DSM led the Court to question the diagnosis of personality disorder, where the last evaluation of the witness had been done a full seven years earlier and not by the proposed expert, and the symptoms of a personality disorder were not present at that time. *Id.* at 1244-45.

Here, Dr. Goldstein conducted a thorough, standard psychiatric exam <u>and</u> a follow up examination two years later (Dkt. 73-1, report, p. 1), reviewed medical records available at the time his report was produced, and reviewed EEOC records available at the time his report was produced, including Milo's Position Statement. Id., Appx 1. Notably, his report was disclosed on March 26, 2015, pursuant to the Scheduling Order, but Dates' deposition occurred months later, on June 4, 2015. Thus, while Defendant complains he did not review enough material, it neglects the chronology.

Additionally, while Milo's claims that he should have reviewed the Complaint and

affidavits of witnesses, Dr. Goldstein explained his role as an expert psychiatrist is not to

substitute his view of the facts for that of the jury: he is not the fact-finder and does not

resolve disputed questions of fact; thus, reviewing all available testimony in the case

was not required:

```
 8        Q.    So how do you know that Isha Dates
 9   rather than Milo's attorney should be believed as
10   to what happened?
11         A.    That is a fairly easy, because I
12   don't -- you know, my role is not to be the
13   fact-finder in the case.  That's the judge or
14   jury's role so I'm not -- in no way I'm making any
15   judgment about whether her version of the facts
16   that, you know, how this evolved at work are
17   accurate or legally accurate or Milo's version is
18   accurate.  That's not my -- it's beyond the scope
19   of my role in this case.
20         My role is to see if she has a psychiatric
21   condition that is in some way related to the way
22   she perceived things.  It's an important
23   distinction, you know, the way she perceived the
24   events as traumatic and upsetting and stressful,
25   whether or not one side or the other is being more
 2   accurate in terms of the facts is not sure for me
 3   to determine.  That would be going beyond my role.
 4        Q.    Would it be fair to say that your
 5   opinions and conclusions set out in your report
 6   are based on the assumption that Ms. Dates has
 7   told you and her treating physicians from their
 8   records the truth?
 9         A.    I would modify that just to say that
10   she presented her version of what happened, how
11   she perceived it.  Whether it is the absolute
12   truth or, you know, it's not for me to determine
13   that based on what she perceived, what her
14   responses were to it; is it a kind of situation
15   where these psychological symptoms of stress are
```

13

16   known to be causally linked or is it far fetched
17   and kind of strange and bizarre?
18        And I found that it was a reasonable, fairly
19   common kind of response to the kind of situation
20   or stress that she was under.

Goldstein Ex. 2, dkt. 73-2, pp. 74-75. Thus, to the extent Defendant is arguing that Dr.

Goldstein's methodologies are flawed because he did not review all available testimony

or resolve factual disputes, that is beyond his role and not required for admission of his

testimony. *United States v. Smith,* 621 F. Supp. 2d 1207, 1219 (M.D. Ala. 2009)(*citing*

*with approval, United States v. Kime,* 99 F.3d 870, 884 (8th Cir. 1996) ("the district court

properly recognized the very real danger that the proffered expert testimony could . . .

cause [the jury] to substitute the expert's credibility assessment for its own"). *See also*

*Redmond,* at 18-20 (rejecting motion to exclude where expert refused to consider

credible evidence that the plaintiff may have given him false information as to the nature

of her condition, such as a sworn statement, which undermined much of Dr. Davis's

diagnosis, and such as some of the volumes of plaintiff's deposition transcripts in which

she provided testimony that her condition occurred after, and as a result of, her lawful

termination, even where the expert admitted that a patient's truthfulness is helpful to

making a diagnosis, because expert concluded that plaintiff was inaccurate in testifying

*because of* PTSD related disorganization, and therefore, it was irrelevant that Dr. Davis

did not read the subsequent volumes of her deposition transcript).

Defendant's other cases do not compel a different result. For instance, in *Munafo*,

14

a treating physician was permitted to offer expert testimony as to diagnosis and treatment, although his testimony as to causation was excluded, because  he did not attempt to make a differential diagnosis or rule out other potential causes of plaintiff's depression, rendering his testimony on causation unreliable.  *Munafo v. Metro. Transp. Auth.*, 2003 U.S. Dist. LEXIS 13495, at *62 (E.D.N.Y. Jan. 22, 2003).  He could not testify as to causation because, as a treating pharmacologist, he was not seeing the plaintiff for anything other than medication management, did not perform an in depth examination of the plaintiff, and did not explore other causes of the patient's depression. As he testified in his deposition, the doctor was concerned only with diagnosis and treatment and not causation. *Id.*, at 57-60. Thus, it was not that a standard examination and review of medical records was insufficient to be reliable as to causation, but that the proposed expert (who was a treating physician) did not attempt to determine causation in his role as treating pharmacologist. Here, Dr. Goldstein conducted two psychiatric examinations and reviewed Plaintiff's medical records, and additional EEOC records, which allowed him to opine as to causation and diagnosis. Dkt. 73-1.[3]

At most, Defendant's complaints about Dr. Goldstein amount to areas which it may choose to cross-examine[4], but none of the caselaw cited supports wholesale

---

3  *Discepolo v. Gorgone,* 399 F. Supp. 2d 123 (D.Conn. 2005) also does not compel exclusion. It simply found that the psychiatrist's methods were reliable, and did not provide a holding as to what methods would *not* be reliable.

4  Defendant complains that Dr. Goldstein was not made aware of the unemployment compensation trial or findings, yet, this is at best related to whether or not Milo's retaliated against Plaintiff when it fired her, and is not related to Dr. Goldstein's opinion. Moreover, as this Court has already found, the unemployment determination is not collateral estoppel on the factual issues in this case.

exclusion of his testimony. *Redmond,* at *29 (court as gatekeeper determines reliability but parties may vigorously cross-examine).

## V.      DR. GOLDSTEIN'S TESTIMONY WILL ASSIST THE JURY

Lastly, Milo's assertion that Dr. Goldstein's testimony would not aid the jury should be rejected. Having an expert testify as to diagnosis and causation would be useful and permissible for the jury to more fully understand Plaintiff's damages. Relying on *Munafo[5], supra,* Defendant contends that Dr. Goldstein's opinion should be excluded because his testimony must address obvious alternative causes and provide a reasonable explanation for dismissing specific factors. Yet Defendant never questioned Dr. Goldstein about possible alternate causes in his deposition, and his report specifically states he evaluated a differential diagnosis and ruled out other causes, including medical conditions and malingering. Dkt. 73-1, p. 6 of 9.  Again, Defendant's argument goes to weight of the evidence not admissibility.

## VI.     CONCLUSION

Dr. Goldstein has decades of relevant experience, has testified in similar cases, employs a reliable and accepted methodology, and employed it here. Defendant did not retain an expert to challenge Dr. Goldstein's methods, and Defendant has never challenged his findings or conclusions. His testimony is relevant and will assist the jury in understanding the extent of Ms. Dates' emotional damages.

---

5   Defendant also cites *Michaels v. Avitech, Inc.,* 202 F.3d 746 (5th Cir. 2000), which is inapposite where the testimony was not probative on the issue of *liability.* Dr. Goldstein is not being offered to testify as to liability, but to explain Plaintiff's emotional distress damages.

Defendant may vigorously attempt to challenge Dr. Goldstein at trial, but his testimony should not be excluded. Wherefore, Plaintiff respectfully requests that Defendant's Daubert motion be denied.

Dated: November 23, 2016

       Mamaroneck, NY

                       /s/ Joshua Friedman
                      By: Joshua Friedman
                      Law Offices of Joshua Friedman
                      Counsel for Plaintiff
                      1050 Seven Oaks Lane
                      Mamaroneck, NY 10543
                      Tel: 888.369.1119 x 7
                      Fax: 866.731.5553
                      josh@joshuafriedmanesq.com
                      *Admitted Pro Hac Vice*

                      Local Counsel:

                      The Law Offices of Jessica Fleming, LLC

                      By:   /s/ Jessica Fleming
                            Jessica Fleming
                      4000 Eagle Point Corporate Drive
                      Birmingham, AL 35242
                      Telephone:   (1-205-991-1720)
                      *Jessica@jessicafleminglaw.com*

**CERTIFICATE OF SERVICE**

I, JOSHUA FRIEDMAN, certify that on this 23[th] day of November 2016, I served a copy of the foregoing on counsel for Defendant by filing same with the Court's ecf-filing system, which automatically generates a notice of service.

_Joshua Friedman_
Joshua Friedman